1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| THOMAS EDWARD DEFLYER, | |
|---|---|
| Plaintiff, | CASE NO. 14-cv-05598 BHS JRC |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | Noting Date: February 20, 2015 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. 20, 21, 22).

After considering and reviewing the record, the Court concludes that the new evidence regarding plaintiff's inability to work from an examining doctor based on

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

examination and firsthand review of an MRI demonstrates that the ALJ's reliance on a contrary opinion is not based on substantial evidence in the record as a whole.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

Plaintiff, THOMAS EDWARD DEFLYER, was born in 1955 and was 52 years old on the alleged date of disability onset of July 30, 2008 (*see* AR. 223-29, 230-38). Plaintiff did not graduate from high school, but did obtain his GED (AR. 47). Plaintiff has work experience as a sandwich artist, construction laborer, convenience store manager and in personnel administration while in the military (AR. 267-74). Plaintiff last worked in a sandwich shop but quit because he "was having difficulty with working, working and, and standing and moving and fast enough, but I was getting complaints that I was too slow" (AR. 51).

According to the ALJ:

> Since the alleged onset date of disability, July 30, 2008, the claimant has had the following severe impairments: hip dysplasia and degenerative disc disease. Beginning on the established onset date of disability, July 16, 2012, the claimant has had the following severe impairments: hip dysplasia, degenerative disc disease, osteoarthritis, major depressive disorder, and attention deficit hyperactivity disorder (20 CFR 404.152(c) and 416.920(c)).

(AR. 27).

At the time of the hearing, plaintiff was living in a camper trailer on his father's property (AR. 46).

# PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 90-97, 98-105, 108-21, 122-35). Plaintiff's requested hearing was held before Administrative Law Judge Rebekah Ross ("the ALJ") on October 25, 2013 (*see* AR. 41-87). On November 8, 2013, the ALJ issued a written decision that was partially favorable for plaintiff (*see* AR. 21-40). As noted by defendant, plaintiff's "entitlement to SSI is not at issue and will not be altered by the outcome of these proceedings" (*see* Response, Dkt. 21, p. 1).

On May 30, 2014, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (AR. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in July, 2014 (*see* Dkt. 1, 3). Defendant filed the sealed administrative record regarding this matter ("AR.") on October 3, 2014 (*see* Dkt. 13, 14).

Plaintiff raises the following issues: (1) Additional evidence incorporated and considered by the Appeals Council undermined substantial evidence support for the ALJ's decision denying Title II benefits (Dkt. 20, p. 4); (2) The ALJ needed to obtain medical expert testimony (*id.*, p. 7); (3) The ALJ provided legally insufficient reasons to discredit plaintiff's subjective claims (*id.* p. 8); and (4) Given these errors, the RFC,

1  hypothetical questions, and step four and five findings were not supported by substantial

2  evidence (Dkt. 20, p. 11).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Did additional evidence incorporated and considered by the Appeals Council undermine substantial evidence support for the ALJ's decision denying Title II benefits?**

Plaintiff submitted new evidence to the Appeals Council consisting of an opinion from orthopedic surgeon, Dr. Thomas Gritzka, M.D., who examined plaintiff on December 4, 2013 (*see* AR. 1-6, 671-80). Dr. Gritzka examined plaintiff and evaluated first-hand plaintiff's May 18, 2010 MRI (*see* AR. 677-78). Among other opinions, Dr. Gritzka opined that since May 18, 2010, plaintiff has not been able to conduct even sedentary work full-time (*see* AR. 679). Plaintiff contends that new evidence considered and made part of the record by the Appeals Council demonstrates that the ALJ's decision is not based on substantial evidence in the record as a whole (*see* Opening Brief, Dkt. 20, pp. 4-7). Defendant contends that the new evidence does not compel a finding of disability (*see* Response, Dkt. 21, pp. 6-7).

The Court may review new evidence presented first to the Appeals Council when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). The Ninth Circuit did not require a finding that plaintiff had good cause for failing to produce the new evidence earlier. *See Ramirez, supra*, 8 F.3d at 1451-54; *see also Taylor, supra*, 659 F.3d at 1232.

The Ninth Circuit more recently held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added); s*ee also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (*citing* 42 U.S.C. § 405(g) (sentence six); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Here, for her physical residual functional capacity ("RFC") determination, the ALJ relied on the opinion from non-examining medical consultant, Dr. Norman Staley, M.D. in support of her conclusion that plaintiff was not disabled before his date last insured (*see* AR. 31-32). However, the Court notes that Dr. Staley indicated that there was "insufficient evidence to assess functional limitations from AOD [alleged onset date] through DLI [date last insured], therefore claim is denied for insufficient evidence" (*see* AR. 127). Therefore, it appears the Dr. Staley's opinion regarding plaintiff's RFC is

based largely on a lack of evidence demonstrating limitations resulting from plaintiff's impairments (*see id.*). It also appears that Dr. Staley did not review plaintiff's May 18, 2010 MRI, but only reviewed the VA files and the VA doctor's recitation of the MRI results (*see* AR. 124-26, 417-18; *see also* Dkt. 20, p. 6).

In contrast, Dr. Gritzka is an orthopedic surgeon, examined plaintiff and personally reviewed plaintiff's May 18, 2010 MRI results, which were taken before plaintiff's date last insured (*see* AR. 677-78). Not only did he opine that since May 18, 2010, plaintiff has not been able to conduct even sedentary work full-time, but he also opined that plaintiff's complaint that as of May 18, 2010 he needed to recline at least two or more hours a day to alleviate pain was credible (*see* AR. 679). Dr. Gritzka also opined that it was more probable than not that if plaintiff had attempted light or medium work since May 18, 2010 on a full-time basis, "the combination of his hip impairment and his low back impairment would probably have resulted in absenteeism of two or more days per month" (*see* AR. 680).

Plaintiff argues that "when two physicians consult the same findings, and one of the physicians has greater firsthand contact than the other, only that physician can offer substantial evidence if the two physicians come to different conclusions" (*see* Dkt. 20, p. 6 (*citing Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983)). Although these cited cases discuss opinions from treating doctors verses examining doctors, the court in *Orn* noted that the examining doctor (who had less firsthand contact) "did not rely on 'independent findings,'" but simply had offered different conclusions. *See Orn, supra*, 495 F.3d at 633. The Ninth Circuit

concluded that the opinion of the doctor with less firsthand contact "was not an 'independent finding,' and his opinion does not alone constitute substantial evidence to support the rejection of [plaintiff's] treating physicians' opinions." *Id.* (citations omitted). Although *Orn* involved the question of whether or not a different conclusion from an examining doctor constituted substantial evidence for a failure to adopt an opinion from a treating doctor, the same principal provides support for plaintiff's argument here. *See id.*

Defendant argues that a "retrospective diagnosis from after Plaintiff's date last insured, purporting to tell his impairments as of the time he was insured, is not entitled to the same weight as that of an examiner who is opining as of the date he had contact with the claimant" (*see id.* (*citing Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996))). However, Dr. Staley never had contact with plaintiff, and therefore never provided an opinion based on examination. Contrary to defendant's argument regarding two doctors who both examined plaintiff, according to the Ninth Circuit, the opinion of an examining physician, such as Dr. Gritzka, generally is "entitled to greater weight than the opinion of a nonexamining physician," such as Dr. Staley. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). The Court similarly is not persuaded by defendant's argument that plaintiff's occasional performance of odd jobs entails substantial evidence contradicting Dr. Gritzka's opinion that plaintiff could not perform even sedentary full-time employment as of his MRI date of May 18, 2010.

1   Dr. Gritzka's opinion clearly indicates that as of the date of plaintiff's MRI, May

2   18, 2010, plaintiff was not capable of performing even sedentary work full-time (*see* AR.

3   679). This opinion contrasts sharply with the contrary conclusion of the non-examining

4   doctor, Dr. Staley, who made no independent findings, that was relied on by the ALJ here

5   (*see* AR. 29, 31-32). In fact, Dr. Staley specifically indicated that there was "insufficient

6   evidence to assess functional limitations from AOD through DLI . . . ." (*see* AR. 127).

7   Therefore, based on the record as a whole, the Court concludes that the new

8   evidence demonstrates that the ALJ's decision is not based on substantial evidence in the

9   record as a whole. *See Brewes*, *supra,* 682 F.3d at 1159-60; *cf. Orn, supra*, 495 F.3d at

10  633 (the contrary opinion of a doctor with less firsthand contact is "not an 'independent

11  finding,' and his opinion does not alone constitute substantial evidence to support the

12  rejection of [a] treating physicians' opinions.").

13  

14  Because adoption of the opinion of Dr. Gritzka would alter the non-disability

15  conclusion from the ALJ, this matter should be reversed and remanded for consideration

16  of the new evidence. *See id*. However, the Court agrees with defendant's argument that

17  the matter should be remanded for further consideration as opposed to remanded with a

18  direction to award benefits. The ALJ did not improperly discredit the opinion of Dr.

19  Gritzka, as the ALJ never had the opportunity to review the opinion from Dr. Gritzka. In

20  addition, the ALJ is responsible for determining credibility and resolving ambiguities and

21  conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

22  (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Therefore, the medical

23  

24

evidence from Dr. Gritzka, in conjunction with the other evidence in this matter, should be evaluated by the ALJ in the first instance. *See id.*

(2)     **Did the ALJ need to obtain medical expert testimony?**

Plaintiff argues that the opinion of Dr. Tasmyn Bowes, Psy.D. demonstrates that testimony from a medical expert is required to determine onset date of disability (*see* Opening Brief, Dkt. 20, pp. 7-8). Defendant does not respond to this argument directly, but argues that Dr. Bowes did not assess an earlier onset date and argues that the opinion of Dr. Bowes "on its own would not seem to support a disability finding at all" (*see* Response, Dkt. 21, p. 6).

Dr. Bowes examined plaintiff on November 13, 2012 (*see* AR. 399-402) and diagnosed plaintiff with depression and attention deficit hyperactivity disorder ("ADHD"), among other diagnoses (*see* AR. 400). As noted by the ALJ, Dr. Bowes opined that plaintiff "would likely become somewhat overwhelmed by the demands and expectations of a normal work setting at this time; [] [] that his depressive symptoms and sleep irregularity would impact his attendance and ability to persist at tasks; [] [] that the claimant would have some difficulty with the social demands of a work setting at this time; [and] [] [] that the claimant is not likely to be currently successful at accomplishing the tasks asked of him with adequate pace and accuracy" (AR. 33 (*citing* AR. 400-01)).

The ALJ gave "great weight" to the opinion of Dr. Bowes, because she "is a mental health expert and she had the opportunity to examine the claimant [and] [her] opinion is consistent with the claimant's presentation and performance during the examination" (*id.*).


In part due to her reliance on the opinion from Dr. Bowes, the ALJ found that plaintiff's RFC changed as of July 16, 2012, and that on that date, the day after his application date, he became limited to unskilled work with simple, repetitive tasks (*see* AR. 29, 32). However, it is unclear from the record why the ALJ chose this July 16, 2012 date as the date that plaintiff's RFC changed and he became disabled, other than because of his application date (*see* AR. 32). Dr. Bowes examined plaintiff on November 13, 2012, and as pointed out by plaintiff, she opined as follows:

> These scores would support some level of impairment in the overall integrity of [plaintiff's] overall brain functioning and indicated mild impairment in complex conceptual tracking or sequencing at this time. When looked at in the context of other testing performed [today] – these results support a processing speed deficit most likely related to life-long ADHD.

(AR. 400).

Although most of the opinions of Dr. Bowes represent her opinion regarding his contemporaneous functioning, her opinion provides some support for plaintiff's position that his limitations from mental impairments existed before his application date (*see id.*). The record suggests, as noted by plaintiff, that "the ALJ used an administrative fact to set the onset date, *i.e.*, the date of Plaintiff's SSI application" (Dkt. 20, p. 7). In light of this fact, and the fact that Dr. Bowes did not give an onset date, the Court agrees with plaintiff that "the actual disability onset date remained ambiguous and could have extended back into the earlier Title II period" (*id.* at p. 8). As noted by plaintiff, when a claimant is found disabled but the date of onset is unclear, the ALJ must call a medical expert before inferring an onset date. *Armstrong v. Comm'r of SSA*, 160 F.3d 587, 589 (9th Cir. 1998)

("the date of onset is unclear and [] the ALJ therefore committed reversible error by failing to call a medical expert before inferring an onset date"); *see also* SSR 83-20, 1983 LEXIS 25 (1983).

As noted by the Ninth Circuit:

> Social Security Regulation ("SSR") 83-20 (1983) provides in relevant part that in determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available . . . . The established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.
> . . . .
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, *e.g.*, the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at 589-90 (*quoting* SSR 83-20, 1983 LEXIS 25 (1983)) (ellipses in original). The Ninth Circuit noted that "in *Delorme*, we held that in this context, 'should' means 'must.'" *Id.* at 590 *(citing Delorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1990)).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ in this matter erred by inferring plaintiff's onset date to be the date after he filed his application without the assistance of a medical expert. *See id.*

    (3)    **Did the ALJ provide legally insufficient reasons to discredit plaintiff's subjective claims?**

The Court already has concluded that this matter should be reversed and remanded for further consideration, in part based on new medical evidence that was considered by the Appeals Council, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter. As a necessity, the RFC, hypothetical questions, and steps four and five findings must be determined anew following remand of this matter.

## CONCLUSION

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 20, 2015, as noted in the caption.

Dated this 28th day of January, 2015.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 13